# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| TRACY A. REAGAN, | : | No. 4:15-CV-1390 |
| --- | --- | --- |
| Plaintiff, | : | (Judge Brann) |
| v. | : | |
| CENTRE LIFELINK EMERGENCY MEDICAL SERVICES, INC. | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### AUGUST 22, 2017

Plaintiff Tracy Reagan and Defendant Center LifeLink ("LifeLink") filed cross-motions for summary judgment on Count I of Ms. Reagan's complaint. For the reasons discussed below, LifeLink's motion is granted, and Ms. Reagan's motion is denied.

## I.  BACKGROUND[1]

### A.  Ms. Reagan's Employment with LifeLink

LifeLink provides emergency medical services in Centre County, with its main office located in State College.[2] During the events of this case, Scott Rawson served as LifeLink's executive director, and Ms. Reagan was employed as

---

[1] All facts used in this section are drawn from exhibits attached to the parties' respective filings.

[2] ECF No. 1 (Plaintiff's Complaint) ¶ 6; ECF No. 7 (Defendant's Answer) ¶ 6.

- 1 -

LifeLink's training director.³ Ms. Reagan's employment with LifeLink was not governed by any employment contract.⁴

In November 2011, Ms. Reagan created a side business – Red Diamond Safety ("Red Diamond") – that offered services similar to those offered by LifeLink, including CPR certification classes.⁵ In May 2012, after Mr. Rawson learned about Red Diamond,⁶ LifeLink and Ms. Reagan entered into a non-competition agreement which prohibited Ms. Reagan from "offer[ing] products or services" to LifeLink customers.⁷ According to Ms. Reagan, Mr. Rawson required her to sign the agreement in order to keep her job at LifeLink.⁸ Ms. Reagan, however, did not believe the agreement was valid, and admitted to several violations of its terms.⁹ Ms. Reagan also admits that she took 15 CPR certification cards from LifeLink to use for Red Diamond, and that she had Eliza Shaw – an employee of LifeLink – assist her in this task.¹⁰

---

³ ECF No. 1 ¶¶ 9, 10; ECF No. 7 ¶¶ 9, 10.
⁴ ECF No. 27, Ex. A (Reagan Dep.) at 128.
⁵ *Id* at 104-06, 111-17.
⁶ ECF No. 27, Ex. E. (Rawson Dep.) at 55-56.
⁷ ECF No. 27, Ex. A at 75-76, Ex. C (Non-Competition Agreement) ¶ 1.
⁸ ECF No. 27, Ex. A at 75-76.
⁹ *Id.* at 111-16. The agreement's validity is not relevant to the disposition of these motions.
¹⁰ ECF No. 27, Ex. A. at 106-08.

During March of 2012, a flood occurred at LifeLink.[11]  Numerous pieces of property were damaged in the flood, including several CPR training manikins.[12] LifeLink submitted a claim to its insurance carrier for this damaged property, and received compensation.[13]  Although LifeLink apparently did not have to produce the damaged property to its insurance carrier at the time LifeLink submitted its claim, its insurance carrier did indicate that LifeLink should retain the damaged property and verify that it was no longer used.[14]  As part of this process, Ms. Reagan sent a letter to Mr. Rawson on May 10, 2012, indicating that the damaged manikins "were given to an individual for target practice at his shooting range and have since been consequently destroyed."[15]

On June 9, 2013, Ms. Reagan was injured in a bike accident while on vacation.[16]  As a result, Ms. Reagan requested – and was granted – leave from her

---

[11]  ECF No. 27, Ex. A at 150; ECF No. 30, Ex. C (Rawson Dep.) at 59-60.

[12]  ECF No. 30, Ex. C at 60; ECF No. 27, Ex. A at 150-51.

[13]  ECF No. 30, Ex. C at 61-62; ECF No. 35, Ex. C (cancelled check from LifeLink's insurance carrier).

[14]  ECF No. 30, Ex. C at 61-64.  At some later point, the insurance carrier indicated that it was no longer concerned about the disposition of the damaged items.  *Id.* at 97-98.

[15]  ECF No. 30, Ex. G (Letter from Ms. Reagan).  Ms. Reagan later admitted that, at the time she sent this letter, the manikins had not, in fact, been destroyed, because the planned target practice never occurred.  ECF No. 27, Ex. A at 151-56.

[16]  ECF No. 30, Ex. A (Reagan Dep.) at 31, Ex. C at 27.

job under the Family and Medical Leave Act ("FMLA").[17] Her leave was scheduled to run from June 12, 2013, through July 29, 2013.[18]

On July 3, 2013, while Ms. Reagan was out on leave, Mr. Rawson was contacted by Ms. Shaw.[19] Ms. Shaw told Mr. Rawson that she overheard Ms. Reagan indicate her intention to use the damaged manikins for her side business, Red Diamond.[20] Mr. Rawson also claimed that, on this date, Ms. Shaw informed him that Ms. Reagan was violating the terms of the non-competition agreement.[21]

As a result, on July 9, 2013, Mr. Rawson held a meeting with Rodney Beard, an attorney for LifeLink, and Jeff Krauss, LifeLink's human resources consultant,[22] where the three discussed what Mr. Rawson had learned from Ms. Shaw.[23] The next day, July 10, 2013, Mr. Beard sent a letter to Ms. Reagan via certified mail, asking Ms. Reagan (1) to "explain[] how and where [the damaged manikins] were disposed of, and any witnesses to the disposition of the items," and

---

[17] ECF No. 1 ¶ 12; ECF No. 7 ¶ 12.

[18] ECF No. 1 ¶ 12; ECF No. 7 ¶ 12.

[19] ECF No. 27, Ex. E at 53-54.

[20] ECF No. 27, Ex. E at 53-54; ECF No. 30, Ex. G at 39-40.

[21] ECF No. 27, Ex. E at 55. Ms. Shaw stated that she did not inform Mr. Rawson about Ms. Reagan's violations of the non-competition agreement until after LifeLink had terminated Ms. Reagan. ECF No. 30, Ex. G at 45. Though this point is disputed, it is not relevant to the disposition of these motions.

[22] ECF No. 27, Ex. H (Beard Dep.) at 5-8.

[23] ECF No. 27, Ex. H at 5-8, Ex. I (Mr. Krauss' handwritten notes of the meeting, which indicate that the group discussed "inventory return" (*i.e.*, return of the manikins), "STD" (*i.e.*, short-term disability) and the "non[-]compete violation").

(2) to "inform [him] as to whether Red Diamond conducted a CPR training program at Penn State University in or about February 2013 [in violation of the non-competition agreement], and, if so, [to] please explain how the issuance of CPR certification cards was handled in regard to that training program."[24] The letter requested a response within 10 days "from the date of this letter" – *i.e.*, by July 20, 2013.[25]

Ms. Reagan replied to the letter via email on July 21, 2013 – one day after the deadline set in the July 10, 2013 letter.[26] In her email, Ms. Reagan stated that "prior to answering, [she would] be seeking legal assistance," and that "[e]ither [her] or [her] attorney w[ould] be in contact . . . as soon as [she could] make such arrangements."[27] Two days later, on July 23, 2013, Mr. Beard replied to Ms. Reagan via email, noting that her July 21, 2013 email was "not responsive to the requests made in [the July 10, 2013] letter."[28] The same day Mr. Beard sent this email, Mr. Rawson sent a letter to Ms. Reagan via certified mail, noting the email exchange between her and Mr. Beard and stating that, "[a]s a result of your failure to respond to [the July 10, 2013] letter . . . effective this date, your employment at

---

[24] ECF No. 1, Ex. A (July 10, 2013 Letter from Beard to Reagan).
[25] *Id.*
[26] ECF No. 27, Ex. K (July 21, 2013 Email from Reagan to Beard).
[27] *Id.*
[28] ECF No. 27, Ex. L (July 23, 2013 Email from Beard to Reagan).

- 5 -

Centre LifeLink is terminated."[29] At that point, there were only six days remaining of Ms. Reagan's FMLA leave.

In his deposition testimony, Mr. Rawson claims that he made the decision to terminate Ms. Reagan based on the advice of Mr. Krauss.[30] He stated that Mr. Krauss, in turn, was concerned about the "potential for [insurance] fraud" related to the manikins, about Ms. Reagan's alleged violation of the non-competition agreement, and about Ms. Reagan's failure to respond to those issues as they were addressed in the July 10, 2013 letter.[31]

Mr. Rawson eventually contacted State College Police about the damaged manikins. A theft investigation was undertaken, but no charges were ever filed against Ms. Reagan.[32]

### B. Procedural History

---

[29] ECF No. 27, Ex. M (July 23, 2013 Letter from Rawson to Reagan). Two days later, on July 25, 2013, Ms. Reagan wrote an email to Mr. Rawson in which she stated that, due to her injuries, she was resigning from LifeLink "effective immediately." ECF No. 27, Ex. N (July 25, 2013 Email from Reagan to Rawson). The impetus behind the sending of this email (and the email's effect on the termination of July 23, 2013) is disputed, but that issue is irrelevant to the disposition of these motions.

[30] ECF No. 27, Ex. E. at 72.

[31] *Id.* In testimony taken before the Pennsylvania Unemployment Compensation Office (relating to Ms. Reagan's claim for unemployment benefits), Mr. Rawson testified that Ms. Reagan's termination was "as a result of failing to respond to Mr. Beard's request" for information in the July 10, 2013 letter. ECF No. 30, Ex. O at 15 (Reagan Unemployment Testimony).

[32] ECF No. 30, Ex. C at 99-101, Ex. N (Police Report).

On July 16, 2015, Ms. Reagan instituted this action against LifeLink.[33] In Count I of her complaint, she alleged that LifeLink's "conduct in terminating [her was] contrary to [her] rights under the FMLA[, i]nasmuch as [LifeLink] interfered with [her] ability to take the FMLA leave." (her "interference claim").[34] In Count II, she alleged that her termination was in retaliation for her decision to take FMLA leave (her "retaliation claim").[35]

LifeLink filed an answer to this complaint on October 1, 2015, denying both of Ms. Reagan's allegations of FMLA violations.[36] LifeLink also raised two counterclaims against Ms. Reagan, alleging that Ms. Reagan had taken several items from LifeLink – a laptop, a pager, and the 15 CPR certification cards referred to above – and that these actions constituted conversion (Count I) and unjust enrichment (Count II).[37]

In her answer to LifeLink's counterclaims, Ms. Reagan admitted to improperly retaining a LifeLink laptop and to taking the 15 CPR certification cards.[38] She "acknowledge[d that] return of the laptop to [LifeLink] is appropriate," and stated her "willing[ness] to either reimburse [LifeLink] for the

---

[33] ECF No. 1.

[34] *Id.* ¶ 21.

[35] *Id.* ¶ 33.

[36] ECF No. 7 at 4-6.

[37] *Id.* at 6-9.

[38] ECF No. 9 (Plaintiff's Answer to Counterclaims) ¶¶ 2, 4.

[15 CPR certification] cards or provide replacement[s]."[39] She stated, however, that she was not in possession of a LifeLink pager, alleging that she "left her assigned pager at [LifeLink] when she went on vacation prior to her injury and subsequent FMLA leave."[40]

On July 25, 2016, this Court granted a stipulated dismissal of Ms. Reagan's retaliation claim.[41] On August 30, 2016, LifeLink filed the instant motion for summary judgment, and on September 9, 2016, Ms. Reagan filed the instant cross-motion for summary judgment.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[42] A dispute is "genuine if a reasonable trier-of-fact could find in

---

[39] *Id.* In her Response to LifeLink's Statement of Material Facts, Ms. Reagan avers that she "has since replaced the CPR [certification] cards with [LifeLink]." ECF No. 33 at 6.

[40] *Id.* ¶ 3. Despite the admissions *supra* regarding the laptop and the CPR certification cards, Ms. Reagan denied liability for LifeLink's claims of conversion and unjust enrichment, and denied LifeLink's allegation of damages. *Id.* ¶¶ 8-13.

[41] ECF No. 26. Three months earlier, in an April 21, 2016 deposition, Ms. Reagan admitted that LifeLink did not terminate her in retaliation for her decision to take FMLA leave. ECF No. 27, Ex. A at 127-28 (Q: "You would agree with me, Tracy, that Centre LifeLink did not terminate you because you took sick leave due to injuries? A: "They really can't . . . I agree with you."). In that deposition, Ms. Reagan also stated her belief that LifeLink had financial reasons for terminating her. *Id.* at 126 ("I think they wanted to reduce their work force and what they had to pay. I think they saw an opportunity to move Ms. Shaw along, and that they could pay her a lot less because she was a lot less qualified for the position.").

[42] Federal Rule of Civil Procedure 56(a).

favor of the non-movant," and "material if it could affect the outcome of the case."[43] When deciding whether to grant summary judgment, a court should "draw all reasonable inferences in favor of the non-moving party."[44]

### B. Claims under the FMLA

Under the FMLA, an "eligible employee" is entitled to leave from her job because of, *inter alia*, "a serious health condition that makes the employee unable to perform the functions the [employee's] position."[45] An employer may not "interfere with, restrain, or deny" an employee's right to FMLA leave[46] or "discriminate" – *i.e.*, retaliate – against an employee for taking FMLA leave.[47] As noted *supra*, Ms. Reagan stipulated to a dismissal of her retaliation claim.[48]

---

[43] *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 300 (3rd Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[44] *Lichtenstein*, 691 F.3d at 300 (citing *Matsushita Elec. Indus. Co. Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Correspondingly, this Court will draw all reasonable inferences in favor of Ms. Reagan when ruling on LifeLink's motion, and all reasonable inferences in favor of LifeLink when ruling on Ms. Reagan's motion.

[45] 29 U.S.C. § 2612(a)(1).

[46] 29 U.S.C. § 2615(a).

[47] 29 U.S.C. § 2615(b). *See also Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 245 n.64 (3rd Cir. 2016) ("Two types of claims can arise under the FMLA, retaliation and interference.") (internal citations omitted)

[48] Case law suggests that an interference claim may subsume a retaliation claim. *See, e.g.*, *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3rd Cir. 2009) ("[F]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee."); *see also* 29 CFR § 825.220(c) ("The [FMLA's] prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."). *But see Ross v. Gilhuly*, 755 F.3d 185, 192 (3rd Cir. 2014) ("[The employee's] argument that [the employer] interfered with his entitlement to take FMLA leave free from later discrimination confuses interference with retaliation and is thus

To prevail on her interference claim, Ms. Reagan must show: (1) that she "was an eligible employee under the FMLA"; (2) that LifeLink "was an employer subject to the FMLA's requirements"; (3) that she "was entitled to FMLA leave"; (4) that she "gave notice to [LifeLink] of [her] intention to take FMLA leave"; and (5) that she "was denied benefits to which [she] was entitled under the FMLA."[49] Stated differently, Ms. Reagan must show "that [s]he was entitled to benefits under the FMLA and that [LifeLink] illegitimately prevented [her] from obtaining those benefits."[50] The parties have agreed (1) that Ms. Reagan is an "eligible employee," (2) that LifeLink is an "employer" for purposes of the FMLA, and (3 and 4) that Ms. Reagan was on an approved FMLA leave when she was terminated.[51] The only question that remains, then, is whether Ms. Reagan was "denied benefits to which [she] was entitled under the FMLA" – *i.e.*, whether LifeLink "illegitimately prevented [her] from obtaining those benefits."

The FMLA "does not provide employees with a right against termination for a reason other than interference with rights under the FMLA."[52] When a

---

misdirected."). However, in light of the stipulated dismissal of Ms. Reagan's retaliation claim and her admission that her termination was not in retaliation for her decision to take FMLA leave, ECF No. 27, Ex. A at 126-28, this Court does not interpret Count I as alleging interference via retaliation.

[49] *Ross*, 755 F.3d at 191-92 (3rd Cir. 2014).

[50] *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3rd Cir. 2007).

[51] ECF No. 1 ¶¶ 5, 7, 12; ECF No. 7 ¶¶ 5, 7, 12.

[52] *Sarnowski*, 510 F.3d at 403 (3rd Cir. 2007); *see also* 29 U.S.C. § 2614(a)(3) ("Nothing in this section shall be construed to entitle any restored employee to . . . any right benefit, or

terminated employee accuses an employer of FMLA interference, the employer "can defeat [the employee's] claim if it can demonstrate that [the employee] was terminated for reasons unrelated to [the employee's] exercise of rights."[53]

LifeLink has met that burden. LifeLink maintains that it terminated Ms. Reagan because she failed to respond to Mr. Beard's July 10, 2013 letter. That was the reason given in the July 23, 2013 letter terminating her, and that was the reason given by Mr. Rawson in his deposition testimony.[54] That evidence is uncontradicted. Although Ms. Reagan testified in deposition that she believes her

---

    position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.")

[53] *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 312 (3rd Cir. 2012); *see also Conoshenti v. Public Service Elec. & Gas Co.*, 364 F.3d 135, 142 (3rd Cir. 2004) ("[I]f an employee is discharged during or at the end of a protected leave for a reason unrelated to the leave, there is no right to reinstatement [under the FMLA].").

    In *Callison v. City of Philadelphia*, the United States Court of Appeals for the Third Circuit stated that, when faced with an FMLA interference claim, an "employer cannot justify its actions by establishing a legitimate business purpose for its decision." 430 F.3d 117, 119-120 (3rd Cir. 2005). This language, in isolation, may be read to suggest that employees invoking their FMLA rights have a shield against lawful, justified termination. Later decisions like *Lichtenstein* and the clear statutory language of 29 U.S.C. § 2614(a)(3), however, prohibit such a reading. Instead, this Court interprets the language of *Callison* to mean that an employer cannot decide to deny FMLA benefits because it has a "legitimate business purpose" *for its decision to deny such benefits*, but may decide to terminate an employee (thereby preventing that employee from obtaining FMLA benefits) if it has a "legitimate business purpose" *for its decision to terminate the employee*. See also *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 978 (8th Cir. 2005) ("[T]he FMLA's plain language and structure dictates that, if an employer were authorized to discharge an employee if the employee were not on FMLA leave, the FMLA *does not shield an employee on FMLA leave from the same, lawful discharge*.") (emphasis added).

[54] ECF No. 27, Ex. E. at 72, Ex. L.

termination was motivated by LifeLink's financial considerations,[55] she has submitted nothing to this Court – other than her own testimony reiterating that unsubstantiated belief – that supports her alternative theory or shows that LifeLink's stated reason was pretextual. Therefore, LifeLink has "demonstrated that [Ms. Reagan] was terminated for reasons unrelated to [her] exercise of rights" under the FMLA, and Ms. Reagan's interference claim must fail.

## III. CONCLUSION

Because the undisputed evidence shows that LifeLink terminated Ms. Reagan for a legitimate reason unrelated to her decision to take FMLA leave, Ms. Reagan cannot show that she was "denied benefits to which . . . she was entitled under the FMLA" or that LifeLink "illegitimately prevented [her] from obtaining [FMLA] benefits." Therefore, Ms. Reagan cannot prevail on her interference claim. LifeLink's motion for summary judgment on Count I, then, is granted, and Ms. Reagan's cross-motion for summary judgment on that count is denied.[56]

---

[55] ECF No. 27, Ex. A at 126. Moreover, even if LifeLink's motivation was financial, that reason is still "unrelated to [Ms. Reagan's] exercise of [her FMLA] rights."

Ms. Reagan's arguments in this Court make it clear that she feels that her termination was unfair. However, Ms. Reagan admitted that her employment with LifeLink was not governed by any employment contract, and that LifeLink could terminate her for a variety of reasons including, for example, if it "d[id]n't like the color of [her] hair." ECF No. 27, Ex. A at 128. Pennsylvania, it should be noted, is an at-will employment state, and, "absent a statutory or contractual provision to the contrary, either party [– employer or employee –] may terminate an employment relationship for any or no reason." *Weaver v. Harpster*, 601 Pa. 488, 500 (2009).

[56] LifeLink's claims for conversion and unjust enrichment remain pending. As noted *supra*, however, Ms. Reagan admitted that return of the laptop was appropriate and, in fact, may

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

already have already done that.  *See* ECF No. 27, Ex. A at 117 (Q: "Is [the laptop] here today?"  A: "Yes."  Q: "I am going to ask you to return it to me, please."  A: "That was my intent.").  Also as noted *supra*, Ms. Reagan avers that she has already "replaced" the 15 CPR certification cards.  It may be, then, that only the pager is still unaccounted for.  The parties, however, have not addressed LifeLink's counterclaims in any way since they were answered by Ms. Reagan.